## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| CHERYL JENKINS, )<br>                        Plaintiff, )<br>    v. )<br>                            )<br>COMMISSIONER OF SOCIAL SECURITY, )<br>sued as Michael J. Astrue, )<br>                            )<br>                  Defendant. ) | **Case No.  07-2193** |

## REPORT AND RECOMMENDATION

In June 2004, Administrative Law Judge (hereinafter "ALJ") Richard Boyle denied disability insurance benefits and supplemental security income benefits to Plaintiff Cheryl Jenkins.  This decision became the final decision of the Regional Commissioner of the Social Security Administration in August 2007.

In November 2007, Plaintiff filed a Complaint for Judicial Review (#4) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the final decision by the Regional Commissioner denying benefits.  In May 2008, Plaintiff filed a Motion for Summary Judgment or Remand (#15) and in July 2008, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#18).  In August 2008, Plaintiff filed a Reply in Support of Her Motion for Summary Judgment or Remand (#21) and Defendant filed a Surreply (#22).  After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment or Remand (**#15**) be **GRANTED**.

### I.  Background

### A.  Procedural Background

Plaintiff first applied for benefits in March 2001, alleging an onset date of August 23, 2000.  Her applications were denied initially and upon reconsideration.  Plaintiff filed a new set of applications in May 2002, alleging disability beginning August 2002 due to broken ankles.

(R. 24.)  The Social Security Administration denied her applications initially (June 2002) and upon reconsideration (September 2002).  She appealed and ALJ Boyle held a hearing in February 2004, at which Plaintiff testified.  An attorney represented Plaintiff at the hearing.  In June 2004, ALJ Boyle denied Plaintiff's applications for benefits based on a finding that Plaintiff was not disabled within the meaning of the Social Security Act.  Plaintiff filed a request for review of the hearing decision; the Appeals Council denied the request in February 2006.  However, the Appeals Council did not give Plaintiff's counsel a chance to submit a memorandum, so it reopened the case for submission of a memorandum.  In August 2007, the Appeals Council again denied review, making the ALJ's decision the final decision of the Commissioner.  Plaintiff subsequently appealed the decision to this Court.

### B.  Plaintiff's Medical Background

Both parties described Plaintiff's medical background in detail.  The Court will not repeat it here.

### C.  Testimony at the Hearing

At the hearing, Plaintiff testified that she was 48 years old.  She weighs 270 pounds and stands 5 feet 9 inches tall.  She has a high school diploma.  She lives in a house with her fiancée and her 20-year-old daughter.  She has a driver's license but drives only about once a month.  Plaintiff sometimes smokes and drinks alcohol but not very often.  She worked at Bunge Edible Oil Corporation for almost 20 years, most recently operating an automated warehouse and driving a forklift.

Plaintiff testified that she has pain in both ankles every day.  She rated the pain as 8 on a 10-point scale and testified that when it is that severe, she will take four aspirin.  She testified that she feels relief when she sleeps.  Sometimes the pain spreads up her legs to her knees and hips.  The pain is worse when she walks, bends, showers, and sits.  When the pain is at its worst, it is sometimes a shooting pain and sometimes it lasts all day.  At one point, her doctor gave her some medicine that helped, but she could not afford it.  Her doctor then told her to take Aleve,

which does not help.  Plaintiff testified that Bextra helped, but her doctor would not give her a prescription for that.  (R. 306.)  When the pain is bad, she will sit with her feet up.  Plaintiff also testified that she has problems with her ankles swelling.  Sometimes her ankles will be swollen when she gets up in the morning.  She has a cane that she uses sometimes, but she did not bring it to the hearing.  At home she mostly uses the walls to get around.  She thinks her ankles are getting worse.  They are always swollen and now she is experiencing more pain.

Plaintiff also has high blood pressure.  She takes three or four pills every day.  She testified that the pills work.  She testified that she blacks out when she gets up or moves too quickly.  Plaintiff also feels depressed but she is not taking any medication for it and she cannot afford to go to the doctor.  In discussing Plaintiff's financial inability to get medical care, the ALJ told Plaintiff about some public clinics that Plaintiff was not aware of.  (R. 310.)

Plaintiff had been seeing her doctor every two to three months, but the last time she went in, he scheduled her to return after four or five months.  She went to the emergency room in September 2003 for pain in her knees and back related to an automobile accident (R. 265); the doctor gave her pain and muscle medication.

Plaintiff testified that she cannot walk without pain.  She would need a cane to walk a couple blocks; otherwise she would fall down.  Plaintiff does not walk up or down the stairs in her house; if she needs to go downstairs she will sit on the steps and move down one at a time; to go upstairs, she will crawl.  She testified that she can sit for about 10 or 20 minutes before her ankles swell to the point she has to get up.  She can lift a gallon or milk or a 12-pack of soda. She can reach overhead to pick something up but she cannot wash her hair without thinking she is going to fall down.  Plaintiff has no trouble reaching out in front of herself.  Plaintiff does some cooking and washes dishes.  She sometimes goes shopping, but not for groceries.  She does not dust, sweep, or vacuum.  She can shower, bathe, and dress herself, but she has difficulty getting in and out of the bathtub due to balance problems.  She talks on the telephone, watches TV all day, and reads sometimes.  She does not visit neighbors or go out to visit family or

friends.  She does not belong to any social clubs, organizations, or church.  She does not garden and she does not have hobbies.  She goes out to eat two or three times a month.  She naps three to four hours a day.  She testified that her medication makes her sleepy.

Plaintiff testified that sometimes when she is watching TV, her ankle pain will distract her, and she forgets about the TV.  She sometimes has "shooting, breathtaking pains."  (R. 320.) She has become really depressed because of the pain.

Plaintiff's attorney told the ALJ that after Dr. Sarat Yalamanchili performed a consultative examination on Plaintiff, he began seeing her as a patient.  (R. 294.)

### D.  The ALJ's Decision

To be entitled to social security disability benefits, a plaintiff must show that he is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 416(i)(1).  To determine disability, the Commissioner uses a five-step sequential evaluation.  He determines:  (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, that is, one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) if the claimant cannot perform the past work, whether the claimant can do other jobs that are available in the national economy.  Between steps three and four, the ALJ determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations.  20 C.F.R. § 404.1545. The claimant bears the burden of production and persuasion at steps one through four.  Once the claimant shows he is unable to perform past work, the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

4

The ALJ's decision followed this five-step process.  At the first step, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since the onset of disability.  At the second step, the ALJ determined that Plaintiff had severe impairments or a combination of impairments including obesity, hypertension, and residuals of bilateral ankle fractures.  At the third step, the ALJ determined that Plaintiff's condition did not meet or medically equal any of the impairments listed in the Regulations.  (R. 27.)  The ALJ determined that Plaintiff has the residual functional capacity (hereinafter "RFC") to perform light work or work which requires occasionally lifting 20 pounds and frequently lifting 10 pounds.  (R. 28, ¶ 5.)  She is limited to occasional climbing, stooping, balancing, kneeling, crouching, and crawling.  Based on this RFC, at step four, the ALJ determined that Plaintiff was not able to perform her past relevant work.  The ALJ also stated that Plaintiff was able to perform a significant range of sedentary work.  (R. 28, ¶ 9.)  At step five, the ALJ determined that Plaintiff was able to perform a significant number of jobs available in the national economy despite her impairments.  (R. 28.)  The ALJ stated that Plaintiff's allegations regarding her subjective symptoms and functional limitations were not credible.  (R. 28.)  Based on Medical-Vocational Rules 201.12 and 201.21, the ALJ found that Plaintiff was not disabled and therefore she was not eligible for social security benefits.  (R. 28.)

## II.  Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence.  *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).  The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings.  *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In other words, so long as, in light of all the evidence, reasonable minds could differ concerning

whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits.  *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

The Court gives considerable deference to the ALJ's credibility findings and will not overturn them unless the plaintiff can show that those findings are patently wrong.  *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992).  However, when credibility determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, reviewing courts have more freedom to review the ALJ's credibility determination.  *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

### III.  Analysis

Plaintiff argues that the Court should remand this case for the following reasons:  (1) the ALJ's RFC finding is incomplete, erroneous, and not supported by substantial evidence; (2) the ALJ improperly assessed Plaintiff's credibility; and (3) the ALJ erred at Step Five by relying on the Medical-Vocational Rules, also known as the Grids.

As an initial matter, the Court notes that it did not consider the subsequent ALJ decision (dated July 03, 2008) that Plaintiff referred to in her reply, nor did it consider Plaintiff's related arguments when addressing the motions for summary judgment in this case.

### A.  The ALJ's RFC Determination

In his decision, the ALJ described evidence from the doctor who treated Plaintiff in 1998 for her broken ankles.  He noted that surgery and physical therapy had been generally successful in relieving the symptoms.  (R. 26.)  He noted that she continued to complain of pain in her ankles but had infrequent treatment after January 2000.  The ALJ then described Dr. Bhupendra Patel's examination in April 2001, which reported full range of motion and only mild swelling.  Similarly, the ALJ stated that a June 2002 x-ray showed that Plaintiff had no fractures or abnormality and possible soft tissue swelling.  Dr. Yalamanchili also reported tenderness in both

ankles and mild swelling on the right ankle but no "marked impairment of range of motion" in her ankles, and a steady gait, with no need for a cane during the gait examination. (R. 194-95.)

After describing this evidence, the ALJ expressly stated that the record contained no opinion from any treating source on the nature and severity of Plaintiff's impairments and resulting limitations and he did not rely on the opinions of the State Agency physicians. He stated as follows:

> The undersigned must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations [citations omitted]. There is no such opinion from any treating source, and, since additional evidence has been added to the record since the State Agency physicians opined, their opinions no longer have probative value.

(R. 26.) The ALJ then described Plaintiff's RFC, stating that he was basing his determination on a consideration of "the entire record, including the exhibits and the testimony at the hearing." (R. 27.) The Court notes that Plaintiff was the only witness at the hearing and the ALJ found her testimony not credible.

The Court assumes that Drs. Patel and Yalamanchili are the "State Agency physicians" whose opinions the ALJ has rejected. The ALJ rejected these opinions on the grounds that additional evidence had been added to the record since they performed their examinations. The ALJ does not indicate what additional evidence he is referring to.

Dr. Patel performed a consultative examination in April 2001. In May 2001, Dr. Reynaldo Gotanco completed an RFC Assessment and references in this assessment indicate that it was based on Dr. Patel's report. Similarly, Dr. James Graham's RFC Assessment, completed in late June 2002, was based on Dr. Yalamanchili's June 2002 consultative examination.

Although the ALJ did not refer to or discuss the RFC Assessments, it appears he relied on them when determining RFC.[1]  In many cases, RFC assessments are based on medical records and opinions from several different doctors.  In this case, other than the 1998-1999 reports regarding Plaintiff's surgery and subsequent therapy, the reports from Drs. Patel and Yalamanchili constitute the only substantive medical evidence in the record.  However, the ALJ cannot reject the doctors' reports and then rely on the RFC Assessments that were based on the rejected reports.

An ALJ must explain and support how he determined a claimant's limitations in formulating an RFC.  *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).  Without an explanation of the ALJ's reasoning, the Court cannot perform a meaningful review of the RFC determination.  The ALJ stated that he determined Plaintiff's RFC based on the exhibits and Plaintiff's testimony at the hearing; however, he found Plaintiff not credible and determined that the opinions of Drs. Patel and Yalamanchili were not probative.  Because the ALJ rejected those opinions, he cannot rely on the RFC Assessments in the records.  As a result, his explanation is inadequate.  Accordingly, the Court recommends remanding for an explanation of the ALJ's reasoning in determining Plaintiff's RFC.  *Id.* ("the ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision").

Plaintiff also contends that the ALJ played doctor because he failed to request medical source statements from the consultative examiners.  Plaintiff acknowledges that the Regulations do not require an ALJ to obtain medical source statements.  *See* 20 C.F.R. § 404.1519n (stating, "we will ordinarily *request*, as part of the consultative examination process, a medical source statement about what you can still do despite your impairment(s)" (emphasis added)).  *See also* SSR 96-5p ("Adjudicators are generally required to request that acceptable medical sources provide these statements with their medical reports").

---

[1]If the ALJ is referring to evidence other than the RFC Assessments, it is entirely unclear what evidence that might be.  The ALJ discussed no other evidence that was added to the record after Drs. Patel and Yalamanchili completed their consultative examinations.

**8**

Here, the ALJ expressly stated he did not rely on the opinions from the State Agency doctors.  The Court concluded above that the ALJ could not rely on the subsequent RFC Assessments after rejecting the doctors' reports on which the assessments were based.  Nevertheless, the ALJ determined that Plaintiff was capable of performing the exertional requirements of light work.  To be considered capable of performing light work, a claimant must have the ability to perform substantially all of the following activities:  (1) lift no more than 20 pounds, (2) frequently lift objects weighing up to ten pounds, and (3) walk or stand for a good deal of time or sit while pushing or pulling arm or leg controls.  20 C.F.R. § 404.1567(b).  Light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday.  SSR 83-10.

As noted above, the ALJ did not indicate the basis for his RFC determination.  Even if the ALJ had relied on the reports by Drs. Patel and Yalamanchili, those reports do not include medical opinions on Plaintiff's functional limitations, particularly with regard to Plaintiff's ability to walk, stand, or sit.  *See, e.g., Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001) ("the absence of an opinion [regarding a claimant's ability to engage in work-related activities] does not constitute substantial evidence supporting the ALJ's findings"); *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (stating that, regarding the absence of evidence on an issue, "silence is equally susceptible to either inference, therefore, no inference should be taken").  Dr. Patel's statement that Plaintiff could walk 50 feet without support (R. 182) does not constitute substantial evidence that Plaintiff could walk and/or stand for six hours in an eight-hour day.  Neither does Dr. Yalamanchili's statement that her gait was steady and she needed no cane during the gait examination.  (R. 194.)  Finally, the ALJ acknowledged that the record contained no treating source opinion regarding Plaintiff's impairments and resulting limitations.

According to the Seventh Circuit court, an ALJ must recontact medical sources "only when the evidence received is inadequate to determine whether the claimant is disabled."  *See* 20 C.F.R. § 404.1512(e); *Skarbek v. Barnhart* , 390 F.3d 500, 504 (7th Cir. 2004).  Although the

ALJ has the authority to make an RFC determination, such a determination must be based on medical evidence regarding a claimant's functional limitations.  Without some evidence in the record that addresses the claimant's functional limitations, the ALJ cannot determine a claimant's RFC.  The Seventh Circuit court has remanded when the record contained insufficient evidence for an ALJ to determine RFC.  For example, in *Bauzo v. Bowen*, the Seventh Circuit court found that the record did not contain substantial evidence that supported the ALJ's RFC determination and remanded the case with instructions to receive and consider additional evidence regarding Bauzo's capacity for work.  *Bauzo v. Bowen*, 803 F.2d 917, 926 (7th Cir. 1986).

The record here does not contain evidence on Plaintiff's functional limitations from which the ALJ could determine Plaintiff's RFC.  Accordingly, the Court recommends that, on remand, the ALJ be directed to have Plaintiff's physician examine Plaintiff to assess her physical functional limitations.

### B.  Plaintiff's Other Arguments

Because the Court has recommended remanding based on the ALJ's RFC determination, it need not consider Plaintiff's other arguments at this time.

### IV.  Summary

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment or Remand (**#15**) be **GRANTED** and that this case be remanded for further consideration consistent with this Report and Recommendation.

**10**

The parties are advised that any objection to this recommendation must be filed in writing with the Clerk within ten working days after service of a copy of this recommendation. *See* 28 U.S.C. 636(b)(1).  Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 26th day of February, 2009.


_____ s/ DAVID G. BERNTHAL _____
U.S. MAGISTRATE JUDGE

**11**